```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
 ROCCO MIRAGLIA,

                Plaintiff,              MEMORANDUM & ORDER
                                         20-CV-1964(EK)
          -against-

 COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Rocco Miraglia challenges the Commissioner of Social Security's denial of his claims for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, Miraglia's motion is granted, the Commissioner's cross-motion is denied, and this case is remanded for further development of the administrative record.

## I. Background

**A. Procedural Background**

        In February 2017, Miraglia applied for disability benefits, alleging a disability onset date of November 8, 2016. Administrative Tr. ("Tr.") 10, ECF No. 9. The agency denied his claim. Tr. 10. Miraglia appeared before an administrative law judge ("ALJ") in January 2019; the ALJ concluded that Miraglia was not disabled and therefore not entitled to disability

benefits. Tr. 10-19. The Appeals Council denied Miraglia's request for review of the ALJ's decision, rendering it final. Tr. 1-6. This appeal followed.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

2

Here, the ALJ found that Miraglia had engaged in no substantial gainful activity since the alleged onset date and that he had the following severe impairments: degenerative disc disease; disorder of the muscles, ligaments, and fascia;[1] dysfunction of major joints; and obesity. Tr. 13. The ALJ determined, however, that none of these impairments rose to the level of a "Listed Impairment." Tr. 13.

When an ALJ identifies severe impairments that do not meet the requirements of the Listings, she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his medical condition. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Miraglia had the RFC to perform "sedentary work" with specified limitations. Tr. 13. Those limitations included that the work must provide a "sit/stand option at will without going off-task" and that Miraglia must only "occasionally" be required to climb, balance, stop, kneel, crouch, crawl, or reach. Tr. 13-14.

At step four, the ALJ considered whether, in light of the RFC determination, the claimant could perform "past relevant

---

[1] The ALJ did not further specify the nature of this disorder. She did note, among other things, that Miraglia had "pain in his knees and lower back that radiates into his right buttock," Tr. 14, that an "MRI of his left shoulder revealed a partial-thickness tear with rotator cuff tendinosis," id., and that imaging of his left knee "showed a posterior horn tear of the medial meniscus." Tr. 15.

3

work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Miraglia could not perform his past work as a delivery truck and garbage collection driver. Tr. 26-27. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). After hearing testimony from a vocational expert, the ALJ determined that Miraglia could perform certain such jobs, including as an addressing clerk, order clerk, or charge account clerk. Tr. 17-18. Given that conclusion, the ALJ concluded that Miraglia was not disabled. Tr. 18.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[2]

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v.*

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

4

*Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion

Miraglia raises two related arguments on appeal. First, he contends that the ALJ's decision is not supported by substantial evidence because she relied only on a single non-examining professional's assessment in determining his RFC. Second, he argues that the ALJ failed to fulfill her duty to develop the record. Specifically, he argues that the ALJ should have made more substantial efforts to obtain a medical opinion from one of Miraglia's treating physicians and, failing that, she should have ordered a consultative medical examination by a professional engaged by the Administration. Given these omissions, Miraglia contends, the ALJ's RFC determination was predicated on her own improper lay assessment of the evidence.

"[A]n ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran*, 569 F.3d at 112. "Whether the ALJ has met his duty to develop the record is a threshold question." *Hooper v. Colvin*, 199 F. Supp. 3d 796, 806 (S.D.N.Y. 2016). This duty "includes ensuring that the record as a whole is complete and detailed enough to allow the ALJ to determine the claimant's

5

RFC." *Sigmen v. Colvin*, No. 13-CV-0268, 2015 WL 251768, at *11 (E.D.N.Y. Jan. 20, 2015).

Generally speaking, "in the absence of any RFC assessments from treating or examining physicians, an ALJ has an affirmative duty to develop the record by obtaining such assessments." *Staggers v. Colvin*, No. 34-CV-717, 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015) (citing cases); *see also Johnson v. Astrue*, 811 F. Supp. 2d 618, 629-31 (E.D.N.Y. 2011) (remanding for ALJ to obtain RFC assessment from treating source). To do so, an ALJ is "authorized to issue subpoenas to ensure not only the production of a claimant's medical records, but also to obtain the testimony of necessary witnesses." *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (Gorenstein, M.J.) (citing 42 U.S.C. § 405(d)).

This obligation is not, however, absolute. The ALJ may be entitled to proceed without a treating professional's RFC assessment if the record otherwise contains "sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013). ALJs' decisions will generally be upheld "where the record is clear and, typically, where there is some useful assessment of the claimant's limitations from a medical source." *Staggers*, 2015 WL 4751123, at *3.

6

That kind of reliable medical evidence is absent from the record here. The only significant medical opinion evidence in the record appears on a form document posing medical interrogatories to a non-examining source, state agency consultant Dr. Eric Schmitter, and as noted below, Dr. Schmitter qualified his findings in meaningful ways.[3]

Schmitter's conclusions were based solely on tests and examinations conducted by other physicians. Tr. 296, 304. Based on these materials, Schmitter opined that Miraglia was limited to lift and to carry up to fifty pounds only occasionally; sit up to eight hours, stand up to six hours, and walk up to four hours in an eight-hour workday; occasionally reach with the left hand; occasionally climb ladders or scaffolds, stoop, kneel, crouch, or crawl; frequently balance or climb ramps and stairs; occasionally tolerate exposure to unprotected heights or moving mechanical parts; and frequently tolerate exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, or vibrations. Tr. 297-302.

---

[3] The ALJ also had before her a medical opinion issued in the context of a worker's compensation claim, to which she assigned little weight. Tr. 16, 246-47; see also Post v. Colvin, 2015 WL 1454931, at *8 (S.D.N.Y. Mar. 31, 2015) ("[The ALJ] correctly observed that [certain] opinions were not instructive because they were given in the context of a Workers' Compensation claim.") (collecting cases)). The parties do not challenge this determination.

7

Despite these findings, Schmitter made clear that he did not think he had sufficient information to opine fully on Miraglia's impairments and limitations. In his interrogatory responses, Schmitter answered "No" in response to the question, "[i]s there sufficient objective medical and other evidence to allow you to form opinions about the nature and severity of the claimant's impairment(s) during the relevant time period?" Tr. 304. He explained that "[i]nadequate information concerning the left knee pathology and [l]umbar spine pathology makes definitive evaluation difficult." Tr. 304. Schmitter then listed some evidence of Miraglia's impairments (while noting that several issues lacked "examination notes") and wrote that "[o]verall, there is a lack of comprehensive [o]rthopedic examination." Tr. 304. He could not provide an opinion as to whether Miraglia's impairments met or equaled any listed impairment because there was "[i]nadequate information to substantiate or deny" that conclusion, and that "[m]ore information is needed." Tr. 304. And even for the findings he did make, Schmitter indicated that those functional limitations were "[s]ubject to revision if more Orthopedic information is provided." Tr. 305.

It may be theoretically possible for a consulting doctor to have insufficient evidence to assess a claimant's impairments but to have sufficient evidence, at the same time,

8

to assess a claimant's RFC.  In such a case, however, one would expect (at a minimum) the record to reflect the reasons why the ALJ believed it possible to thread that needle.  The instant record does not make those reasons clear, if they existed.

The ALJ did recognize, at least in part, the limitations of Schmitter's written submission.  Tr. 16.  She "found no support for [the] environmental limitations" that Schmitter identified.  *Id.*  Moreover, because Schmitter "did not have the opportunity to hear the claimant's subjective complaints," the ALJ gave Miraglia "the benefit of every doubt," limiting him to sedentary work and imposing various restrictions.  *Id.*  The ALJ nevertheless gave Schmitter's opinions "significant weight" because they were "consistent with the objective medical evidence" in the record and because Schmitter was "knowledgeable of the Social Security program's rules and objectives."  Tr. 16.

Given these deficiencies in the only relevant medical opinion evidence, the ALJ should have obtained further evidence before rendering an unfavorable decision.  "[W]hile the ALJ did develop the record by posing interrogatories" to a medical expert, this did not "replace [her] obligation to make every reasonable effort to secure an opinion from plaintiff's treating physician."  *DeJesus v. Comm'r of Soc. Sec.*, No. 13-CV-2251, 2014 WL 5040874, at *16 (S.D.N.Y. Sept. 29, 2014); *see also*

9

*Roginsky v. Comm'r of Soc. Sec.*, No. 17-CV-5559, 2020 WL 473617, at *5 (E.D.N.Y. Jan. 28, 2020) (remanding where there was no examining source opinion in the record); 20 C.F.R. § 404.1512(b)(1) ("We will make every reasonable effort to help you get medical evidence from your own medical sources . . ."). Indeed, medical reports that are not based on personal observation generally "deserve little weight in the overall evaluation of disability." *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990); *see also Filocomo v. Chater*, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) (reliance solely on RFC assessment "completed by a doctor who never physically examined" the claimant would be "unfounded, as the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight").[4]

Because the ALJ's failure to develop the record is a threshold issue that impacts other aspects of the disability claim, the Court need not address Miraglia's remaining arguments. *See Morales v. Colvin*, No. 13-CV-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (remanding and declining to address the claimant's additional arguments because "the

---

[4] The Commissioner argues that Miraglia bears some fault because his former counsel agreed to the ALJ requesting a medical expert opinion and did not insist on a consultative examination. Def. Mot. for J. on the Pleadings 20, ECF No. 13; *see* Tr. 46. But the limitations of Schmitter's opinion, which did not exist at the time of the hearing, may not have been apparent before the opinion was actually rendered.

10

ALJ's analysis may change on these points upon remand"), *report and recommendation adopted*, *id.* at *1.

### IV. Conclusion

For the reasons set forth above, the Court grants Miraglia's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The matter is remanded for further proceedings consistent with this Order.  On remand, the ALJ should further develop the medical evidence regarding Miraglia's RFC as discussed in this Order.

SO ORDERED.

                                             /s/ Eric Komitee
                                            ERIC KOMITEE
                                            United States District Judge

Dated:     May 17, 2022
          Brooklyn, New York